CAIN *vs.* LIGON, administrator, *et al.*

1. Since the act of 1866 (Code, §1754), a married woman is a *feme sole* as to her own property, and may make any disposition thereof not prohibited by statute. She is prohibited from selling to her husband unless allowed by order of the superior court, but there is no restriction as to her making a gift to him.
2. Where such transactions take place between persons sustaining certain confidential relations to each other (as that of husband and wife), they are not *ipso facto* void, but may be rendered void at the option of the donor, if induced by undue influence or other improper appliances or persuasions, or when brought about by anything amounting to constructive fraud. Such gifts will be scrutinized with great jealousy, and upon the slightest evidence of persuasion or influence, will be declared void, at the instance of the donor or her legal representative, at any time within five years after the making thereof.

October 2, 1883.

Husband and Wife. Sales. Gifts. Fraud. Before Judge CLARK   Stewart Superior Court. April Term, 1883.

Hobbs, who was in possession of certain property, filed a bill to require John M. Cain and Ligon, administrator of Mrs. Emma M. Cain, to interplead and settle their right thereto. It appeared that John M. Cain was the husband of Emma M. Cain, deceased. He claimed the property under two deeds of gift executed by her to him in her lifetime. No order of court was shown allowing or confirming them. Ligon, administrator, insisted that they were void, and the court so charged. There was other evidence not material here. After verdict for Ligon, administrator, Cain excepted.

E. G. Simmons; J. L. Wimberly; E. H. Beall; R. F. Watts, for plaintiff in error.

B. F. Harrell; Peabody & Brannon; T. D. Hightower; C. F. Crisp, for defendants.

Hall, Justice.

The question made by this record is whether a married woman can give to her husband, without the approval and sanction of the chancellor, any portion or all of her separate property, when it is not encumbered with a trust in which remaindermen and others are interested, and whether her deed conveying such property to him is void or merely voidable. The court below decided that a gift, under the circumstances, was void; the propriety of this decision is the point presented for adjudication.

Since 1866, Code, §1754, all the property owned by the wife at the time of her marriage, and all acquired by her during the coverture, remains her separate property, and is not liable to the debts or contracts of her husband. With this act a new rule of property was introduced with respect to married women, as has been frequently decided by this court, "and a corresponding enlargement of their legal capacity. With reference to her separate estate, a female, married or single, is now on full equality with a

male, except in a few particulars defined by statute. Save in those particulars, when her equitable rights are commensurate with those of the male, her legal rights are also commensurate with his, and the difference of sex is utterly immaterial." 62 *Ga.*, 738. She is inhibited from entering into any contract of suretyship, or from assuming the debts of her husband, and any sale of her separate estate in extinguishment of his debts, is made absolutely void. Code, §1783, and cases cited in note thereunder. No contract of sale made by a married woman of her separate estate with her husband, or her trustee, is valid, unless allowed by order of the superior court of the county of her domicile. *Ib.*, 1785, and cases cited in note thereunder; also, *Ib.*, 2337.

If a gift is synonymous with a sale, then this transacaction falls within these restrictions; but if it is not, then its validity or invalidity is to be tested by a different principle. A sale is, according to Blackstone (2 Comm., 446), " a transmutation of property from one man to another, in consideration of some price." By Kent it is defined (2 Comm., 615, 11 ed.,) to be "a contract for the transfer of property from one person to another for a valuable consideration." Benjamin (Sales, §1) says, " it may be defined to be a transfer of the absolute or general property in a thing for a price in money." A valuable consideration, as money or property, is essential to its validity. In this respect it is the very opposite of a gift, which need not rest for its support upon any consideration of value, and is a mere gratuity, founded on feelings of benevolence, kindness, charity or love.

Where such transactions take place between persons sustaining certain confidential relations to each other, they are not *ipso facto* void, but may be rendered void at the option of the donor, if induced by undue influence or other improper appliances or persuasions; in short, when they are brought about by anything amounting to constructive fraud, which "consists in any act of omission or commission

contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." Code. §3173. This rule applies to contracts between parties sustaining toward each other certain confidential relations, which are such as arise from nature, or are created by law, or result from contracts, and where one of the parties is so situated as to exercise a controlling influence over the will, conduct or interest of the other; or where, from a similar relation of mutual confidence, the law requires the utmost good faith, such as partners, principal and agent, etc. *Ib.*, §3177. So a gift by a person just arriving at majority, or otherwise peculiarly subject to be affected by such influences, to his parent, guardian, trustee, attorney, or other person standing in a similar relationship of confidence, shall be scrutinized with great jealousy, and upon the slightest evidence of persuasion or influence towards this object, shall be declared void at the instance of the donor, or his legal representative, at any time within five years after the making of such gift. Code, §2666. In *Urquhart vs. Oliver*, 56 *Ga. R.*, 344, this court held that the wife, since the constitution of 1868 and the act of 1866, might, without the consent of her husband, make a will. Doubting, but not dissenting from the conclusion of his brethren, Bleckley, J., said, " A wholly new rule of property is thus introduced. With reference to all they own, women remain, after marriage, as effectually separated from men as they were before marriage. The husband has as little interest in, or control over, his wife's property as she has over his; indeed less, for she is entitled to be supported out of his, and when necessary, is recognized by the law as his agent to charge it with her support; whereas, his power and control over her property rests, in all cases, upon her voluntary consent. She is thus his full equal before the law in the ownership and control of property." She is declared a *feme sole* as to her separate estate, and is only restricted in its disposition to certain named persons, and

for certain given purposes, and as to one kind of disposi-
tion, viz : a sale, which, as we have seen, is used in its le-
gal, and not in its enlarged and popular sense (Code, §1783),
and from the connection, and with reference to the subject-
matter, is advisedly used in contradistinction from a gift.
See especially Code, §§ 1785, 2337. We could not add to
these restrictions without transcending the right of the
court to interpret, and assuming legislative functions, by
amending a plainly written law. Beyond the clear import
of these restrictive clauses we cannot go.

The court below erred in charging the jury that the
deeds from the wife, Emma Cain, to her husband, John M.
Cain, conveying to him the property in dispute, were void,
without an order of the court, allowing and approving
them. We hold that in any event they were only voidable;
that two questions should have been submitted to the jury :
First, whether the deeds were procured by the exercise of im-
proper influence on the part of the said Cain over his wife,
in consequence of the confidential relations existing be-
tween them; and secondly, whether more than five years
have elapsed from the execution and delivery of these
conveyances to the bringing of this suit by the represent-
ative of the deceased wife; and, in this connection, whether
she survived more than this length of time without
attempting or making any legal effort to cancel the deeds,
and whether she had desired to have them canceled, and
was prevented from doing it by the improper persuasion
or other influence of her husband.

Judgment reversed.